## UNITED STATES v. CHICAGO, R. I. & P. RY. CO.

### (District Court, W. D. Missouri. February 21, 1908.)

1. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—CONSTRUCTION.

Act March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), prohibiting the use by common carriers by railroad in interstate commerce of any car not equipped with automatic couplers, and imposing a penalty for its violation, while a penal statute, is remedial, and designed to protect employés from injury, and is to be given a fairly liberal construction to effectuate such purpose.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*]

2. RAILROADS (§ 254*) — SAFETY APPLIANCE ACT — ACTION FOR VIOLATION — MEASURE OF PROOF.

In an action by the United States against a railroad company to recover the penalty imposed for a violation of Safety Appliance Act March 2, 1893, c. 196, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), it is not required, to warrant a recovery, that the proofs should establish the violation beyond a reasonable doubt.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 772; Dec. Dig. § 254.*]

3. RAILROADS (§ 229*)—SAFETY APPLIANCE ACT—VIOLATION.

A railroad company, which moved, in the carriage of interstate commerce, a car the automatic coupler on which was so out of repair that it would not work, is not relieved from liability for violation of Safety Appliance Act March 2, 1893, c. 196, § 2, 27 Stat. 531 (U. S. Comp. St. 1901, p. 3174), by the fact that it placed a bad-order card on such car, indicating the defect.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. § 743; Dec. Dig. § 229.*

Duty of railroad companies to furnish safe appliances, see note to Felton v. Bullard, 37 C. C. A. 8.]

At Law. Action by the United States against the Chicago, Rock Island & Pacific Railway Company. Judgment for the United States.

The defendant was charged with having violated the safety appliance act (Act March 2, 1893, c. 196, 27 Stat. 531 [U. S. Comp. St. 1901, p. 3174]), and an action in debt was brought to recover the statutory penalty of $100. A jury was waived, and the trial was to the court. The evidence showed that the defendant hauled an Erie coal car with the uncoupling chain "kinked" and wedged in the coupler head on one end of the car. In that condition it was impossible to operate the coupler without a man going between the ends of the cars. One of defendant's engines coupled onto a "cut" of cars in which was this defective car, and hauled it to the yard of the Chicago, Bur-

lington & Quincy Railway Company, where a number of other cars were coupled onto the "cut." The entire lot was then hauled by the defendant over to the Chicago & Alton yards, where five more cars were attached. One of the defendant's inspectors undertook to operate the coupler in the Union Depot and found the car defective. He then affixed a "bad-order" card to the car, indicating the nature of the defect. The car was then taken by the defendant to Armourdale, Kan. The defendant contended that, by placing the "bad-order" card upon the car, it had complied with the statute, and was not liable for the penalty.

Arba S. Van Valkenburg, U. S. Atty., and Leslie J. Lyons, Asst. U. S. Atty.

Frank Sebree, for defendant.

SMITH McPHERSON, District Judge (after stating the facts as above). I find in the Johnson Case, as reported in 196 U. S. 1, 25 Sup. Ct. 158, 49 L. Ed. 363, that, while the rule of construction as to penal statutes requires such statutes to be strictly construed, yet in the safety appliance statute the design to give relief was more dominant than to inflict punishment; the act, therefore, falling within the rule applicable to statutes to prevent fraud upon the revenue and for the collection of customs. The rule there laid down is that the statute is to be construed sensibly and as a whole, with a view to accomplish the obvious intent of Congress. In that decision the Supreme Court reversed the Circuit Court of Appeals for this circuit,[1] because, as it said, the view of the latter court has been too narrow. The great purpose of the statute was to remedy conditions. It is remedial and preventive, and, if observed, will reduce to a minimum the crippling and killing of railroad employés in this country. As I said yesterday, every one of us can recollect, 15 or 20 years ago, that about four times out of five, when you went to shake hands with a railroad employé, either a switchman, brakeman, or freight conductor that had been raised from a brakeman, you took hold of a crippled hand; fingers gone, sometimes an entire hand or leg gone, because of the extraordinary hazardous business of railroading.

The Supreme Court of the United States upheld the Iowa statute with reference to liability because of the negligence of a co-employé upon the ground that the Legislature had the authority to single out the railroad and make them liable for the negligence of a co-employé, while the same would not be liable if applied to a manufacturing plant, solely because of the extremely hazardous business of railroading, placing railroads in a distinct class. You can scarcely pick up a paper but what you read of some accident to an employé, but it used to be ten times worse. Up in Iowa we do not have one accident now to where we used to have ten. The dockets used to be crowded with work by reason of the number of these accidents, and the percentage has greatly decreased. I do not know how it is in Kansas City; but, if it has not decreased, it is on account of the marvelous growth of Kansas City. But I am sure the percentage has decreased. That is the purpose of this statute, and every one who has humane views commends this statute. While I suppose, of course, there are no statistics to prove it, I have no doubt that the enforcement of this statute has been a money-saving proposition to the railroad companies. I have

[1] 117 Fed. 462, 54 C. C. A. 503.

no doubt that the occasional infliction of a small penalty of $100 prevents many a $5,000 and $10,000 judgment.

But it can not be said that the statute was enacted for that purpose. It was enacted for the protection of railroad employés. It is within the knowledge of every one of us that everybody is negligent almost every day of his life. We cross these street car tracks without a thought in our minds that we are within miles of a track. Sometimes we are reading a paper, or visiting with some friend, and if we are run down we could not recover; because of our own gross contributory negligence. In a great percentage of these railroad cases, the employés are denied a recovery because of their own negligence. You seldom have a case but what somebody is negligent. If there was no negligence, there would be but few cripples or untimely deaths. What is the use of putting up a red card on the end of a car, as was done after the United States inspectors spotted the car, except to call the attention of some one to the fact that it needed repairs? That does not stop brakemen from going in there. Men are negligent because they are unthinking for the time being, and some of them have a dare-devil spirit. Any day you can stand in the railroad yards and see a switchman who stands in the middle of the track. The switch engine comes to him. He takes his life in his hands every time he does it, but he steps on the switchboard and looks around for the applause of the crowd, about as much as to say, "See my agility." You cannot stop that. You cannot stop a man from going in between cars by putting a red sign on one of them, and they will not report it, because they do not care to have the hostility of the company that employs them, and they do not say anything about it unless they get hurt. You and I would do the same.

Now, while this is a penal statute, it has the form of a civil action. There was a time when the courts held, in slander and libel cases, where the words used imputed a crime, that the proof must convince the court or jury beyond a reasonable doubt; but I understand that the rule has been abrogated. Such weight of proof is not required anywhere, except in proving an indictment; and this is not that kind of a case. Now, this inspection of the 23d was very indefinite and vague. One man has no recollection about it at all. He placed thereon a mark "O. K." The other man has no recollection whatever, except the memorandum in his book. That kind of an inspection will not do. The next thing we know this car is on the way, and my notion about it is that the car would have been taken to St. Louis in that condition if it had not been that these government inspectors happened along at that time. Now, if these government inspectors, who in all cases are ex-railroad employés, could see this, why could not this train crew see it? And they would not have seen it when they did, if they had not seen these government inspectors riding this car, and they then supposed something was wrong. The two government inspectors were on this particular car, so, if the train was cut, they would still be with the car, I suppose.

Now, here is a case of $100. If the penalty were extreme, a jury would hesitate more about inflicting the penalty. I would like it bet-

ter if the same penalty was fixed in these 28-hour cases. I have tried a good many of them, and I have never yet tried one that called for more than the minimum penalty, and I have never inflicted more than that. In most cases there is some substantial reason for delay, and too often a good deal of malice is behind the prosecution, not on the part of the government officials, but on the part of the shipper. He believes he has been charged a little too much for his hay or grain, or has some other complaint. In nearly every case under that statute that I have tried, I have found that kind of a spirit behind the prosecution. Here is a class of cases where it is impossible to have any malice back of the prosecution. The penalty is light, and in every case, where the proofs are reasonably sufficient, I think it is wise and proper and benevolent to enforce the penalty. And I think it is an act of benevolence to the company itself to see to it that these things are broken up, and thereby lessen the amount they have to pay in personal injury cases. There are many thousand employés in this hazardous business, and I do not think in this case there is any sufficient excuse shown. There is no telling how long that car had been in that condition, and I have no doubt that, if these government inspectors had not been there, that car would have been hauled across the state of Missouri and then to Pennsylvania, and with what result nobody knows.

The judgment will be for the payment of the penalty of $100, and 90 days for a bill of exceptions will be granted.